BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No.: 3060 |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

In their opposition to Movants' motion, Defendants focus on theoretical obstacles that a multi-defendant MDL would ostensibly present. Defendants' opposition to centralization, however, fails for at least five reasons.

*First*, multi-defendant MDLs are not novel and there is no reason to believe that this litigation is the exception to the proven track record of effective MDLs in similar cases against multiple defendants. Indeed, Defendants outright ignore the fact that the Judicial Panel for Multidistrict Litigation ("Panel") routinely centralizes other similar matters involving numerous defendants, differing brands of products, and differing injuries, such as *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*,[1] *In re Nat'l Prescription Opiate Litig.*,[2] *In re Proton-Pump Inhibitor Liab. Litig. (No. II)*,[3] and *In re Acetaminophen - ASD/ADHD Prod. Liab. Litig.*—to name a few.[4]

---

[1] MDL No. 3047, -- F. Supp. 3d --, 2022 WL 5409144, (J.P.M.L. Oct. 6, 2022).

[2] MDL No. 2804, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017).

[3] MDL No. 2789, 261 F. Supp. 3d 1351, 2017 WL 3309647 (J.P.M.L. Aug. 2, 2017).

[4] MDL No. 3043, -- F. Supp. 3d --, 2022 WL 5409345 (J.P.M.L. Oct. 5, 2022).

***Second***, the number of presently filed cases—which has increased from nine to twenty-one in just thirty days since Movants' initial motion was filed—pending in ten federal judicial districts, is more than sufficient to justify an MDL, despite Defendants contentions otherwise.

***Third***, Defendants fail in their attempt to downplay the commonality of the hair relaxer products at issue in this litigation. The cases involved in this request for coordinated or consolidated pretrial proceedings all involve products that contain endocrine disrupting chemicals ("EDCs") and are used for the same purpose; they present the same primary legal issues (product liability claims); and focus on the same core factual issues (*i.e.*, the presence of EDCs in Defendants' products and the resulting injuries to Plaintiffs from exposure to those EDCs).

***Fourth***, the four groups of Defendants who oppose Movants' request for centralization do not offer, nor can they offer, any concrete plan as to how the parties in twenty-one filed cases (with more being filed seemingly by the day), in ten district courts across the United States can informally coordinate this action without the Panel formally centralizing the matters—especially considering the rate at which the cases are presently being filed in judicial districts across the United States. *See In re Acetaminophen - ASD/ADHD Prod. Liab. Litig.*, MDL 3043, WL 5409345 (consolidating actions into an MDL where the litigation consisted of 18 actions pending in 7 separate district courts).

***Finally***, in their alternative request to centralize these matters in the Southern District of New York—where only a single case is presently pending—Defendants fail to put forth any compelling reason why this Panel should not consolidate pretrial proceedings for these cases in a central geographical location in the Northern District of Illinois that is convenient for *all* parties and counsel before either the Honorable Mary M. Rowland or the Honorable Matthew F. Kennelly. As such, Defendants' respective oppositions to Movants' request for centralization in the Northern

District of Illinois before the Honorable Mary M. Rowland or the Honorable Matthew F. Kennelly should be rejected in their entirety.

## I. Plaintiffs allege common issues of fact that apply to all Defendants.

Defendants fail in their attempt to portray the actions before this Panel as involving disparate factual allegations that are uncommon to all Defendants. Not only do Defendants fail to elaborate on the manner in which Plaintiffs' claims against them are unique, but Defendants appear to assert that all Plaintiffs must plead cookie-cutter factual allegations pertaining to all Defendants' products. Defendants' argument has been denied by this Panel frequently, as this Panel has stated that "[t]ransfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer. Also, the presence of additional or differing legal theories is not significant when the actions still arise from a common factual core[.]" *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008); *see also In re Kugel Mesh Hernia Patch Prod. Liab. Litig.*, 493 F. Supp. 2d 1371, 1373 (J.P.M.L. 2007) (same).

Plaintiffs' allegations against all Defendants contain sufficient common factual issues because all Plaintiffs allege similar harm—all of which is based on exposure to Defendants' hair relaxer products—and that Defendants' products contributed to that harm through the same mechanism. Indeed, this Panel readily centralized product liability cases where "all plaintiffs allege they were injured by the same product in the same manner," which "indicat[es that] common factual issues will arise concerning the potential risks associated with the use of" the allegedly defective product at issue. *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, 330 F. Supp. 3d 1378, 1378 (J.P.M.L. 2018).

Every complaint in the related actions alleges that women used Defendants' branded hair relaxer products, causing serious medical conditions to the female reproductive system, such as

uterine cancer and endometriosis. Defendants do not dispute that the related actions all arise out of the same core operative facts—that Plaintiffs were injured after prolonged usage of Defendants' hair relaxer products. Nor could they dispute the commonality of core operative facts against them because all of the presently filed complaints allege, among other common factual allegations, that Defendants:

- sold defective hair relaxer products under Defendants' own brand names to the general public, marketing these products specifically to women of African descent;
- knew that prolonged exposure to hair relaxer products containing EDCs causes reproductive system disease, such as uterine cancer; and
- failed to warn of the effects of prolonged exposure EDCs contained in Defendants' products.

Relying on these same facts, Plaintiffs also allege the same or similar legal theories, including failure to warn, negligence, breach of warranty, violation of consumer protection laws, and misrepresentation. The overlap in common legal theories alone counsels in favor of consolidation. *See In re Power Morcellator Prods. Liability Litig.*, 140 F. Supp. 3d 1351, 1353 (J.P.M.L. 2015) (finding "common factual questions" regarding design, testing, and manufacture of products); *In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liability Litig.*, 949 F. Supp. 2d 1373, 1375 (J.P.M.L. 2013) (centralization warranted when "actions share core issues of fact concerning the design, manufacture, testing, and marketing" of product). Indeed, "[i]ssues concerning general causation, the background science, regulatory history, and marketing will be common to all … actions," and "[c]entralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings on Daubert and other issues, and conserve the resources of the parties,

4

their counsel, and the judiciary." *In re Viagra (Sildenafil Citrate) Prod. Liab. Litig.*, 176 F. Supp. 3d 1377, 1378 (J.P.M.L. 2016).

Moreover, that individualized factual issues may arise in each action does not—especially at this early stage of litigation—negate the efficiencies to be gained by centralization. The Panel has centralized product liability cases involving similar products made by different manufacturers where overarching issues of general causation exist. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, No. MDL 3047, -- F. Supp. 3d --, 2022 WL 5409144, at *2 (J.P.M.L. Oct. 6, 2022); *see also In re Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015).

### A. Based on past MDLs involving multiple defendants and multiple products, centralization into a single MDL is proper and appropriate here.

There have been numerous MDLs that have involved multiple defendants and multiple products.[5] Despite this overwhelming precedent supporting centralization of these actions in a

---

[5] *See, e.g.*, *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 201 F. Supp. 3d 1375, 1378 (J.P.M.L. 2016) ("a single, multi-product MDL is necessary to ensure the just and efficient conduct of this litigation"); *In re Walgreens Herbal Supplements Mktg. &Sales Practices Litig.*, 109 F. Supp. 3d 1373, 1375 (J.P.M.L. 2015) ("a single MDL encompassing all four retailers is necessary to ensure the just and efficient conduct of this litigation"); *In re Incretin Mimetics Prods. Liab. Litig.*, 968 F. Supp. 2d 1345, 1346-47 (J.P.M.L. 2013) (centralizing actions against competing defendants which manufactured four similar diabetes drugs that allegedly caused pancreatic cancer); *In re Welding Rod Products Liab. Litig.,* 269 F. Supp. 2d 1365 (J.P.M.L. 2003) (centralizing actions involving more than ten individual defendants where the plaintiffs alleged personal injuries caused by exposure to welding fumes); and *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 173 F. Supp. 2d 1377 (J.P.M.L. 2001) (centralizing actions involving eight different pharmaceutical defendants manufacturing nasal decongestants); *In re Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation*, MDL 2436 (J.P.M.L. 2013) (consolidating product liability actions involving multiple manufacturers of various over-the-counter acetaminophen products before the Honorable Lawrence F. Stengel); *In re American Medical Systems, Inc., Pelvic Repair Systems Products Liability Litigation*, MDL 2325 (J.P.M.L. 2012) (consolidating MDL Nos. 2325, 2326, and 2327, which involved various models of pelvic surgical mesh products manufactured by three groups of manufacturers, before the Honorable Joseph R. Goodwin); *In re Chinese–Manufactured Drywall Prods. Liab. Litig.*, 626 F.Supp.2d 1346 (J.P.M.L. 2009) (consolidating actions involving defective drywall manufactured by various different Chinese manufacturing defendants to the Honorable Eldon E. Fallon); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 990 F.Supp. 834, 834-36 (J.P.M.L. 2001) (consolidating actions concerning in excess of three separate diet drugs and involving multiple defendants where there were common factual questions

single MDL, Defendants contend that the creation of a single MDL would be improper because the efficiencies of consolidation will be overwhelmed by the individualized issues involving Defendants.

Defendants, however, ignore the key factual question that must be asked in every one of the related actions: Does exposure to EDCs contained in Defendants' hair relaxer products cause diseases to the female reproductive system? That is not a "superficial" point of commonality. It goes to the crux of each and every action, and it renders immaterial the number of defendants in these cases. For this reason, too, the Panel should consolidate. *See In re Acetaminophen - ASD/ADHD Prod. Liab. Litig.*, No. MDL 3043, -- F. Supp. 3d --, 2022 WL 5409345 (J.P.M.L. Oct. 5, 2022) (consolidating cases involving different products, different suppliers, and different injuries); *In re Proton-Pump Inhibitor Liab. Litig. (No. II)*, No. MDL 2789, 261 F. Supp. 3d 1351, 2017 WL 3309647 (J.P.M.L. Aug. 2, 2017) (same); *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 437 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020) (consolidating cases against dozens of different defendants that manufactured, sold, or distributed Zantac); *In re Valsartan N Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1381 (J.P.M.L. 2019) ("All of the valsartan actions will raise these issues, regardless of whether the alleged supplier of the valsartan API was ZHP, Mylan,7 Hetero Labs Limited, or some other

---

regarding alleged defects in the drugs and assigning case to the Honorable Louis C. Bechtle); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, (MDL 1014) (J.P.M.L. August 4, 1994) (consolidating actions involving multiple manufacturers of orthopedic bone screws even though these actions involved different products with varying designs and assigned case to case to the Honorable Louis C. Bechtle); *In re Silicone Gel Breast Implants Products Liab. Litig.*, 793 F. Supp. 1098, 1099-100 (J.P.M.L. 1992) (consolidating 78 actions involving multiple manufacturers of breast implants even though these actions involved substantial variation in the underlying product and assigning case to the Honorable Sam C. Pointer, Jr.); *In re Humana Inc. Managed Care Litig.*, MDL-1334, 2000 WL 1925080 (J.P.M.L. Oct. 23, 2000) (consolidating multiple class actions pending against different HMOs and involving different products and assigning case to the Honorable Federico A. Moreno).

entity."); *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017) (consolidating cases against different manufacturers and distributors of prescription opioids).

This case is similar to *In re Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation*, MDL 2436 (J.P.M.L. 2013), wherein this Panel created an MDL litigation involving multiple defendants and multiple different products all containing the common drug acetaminophen. Defendants here, however, misplace their reliance on cases that are clearly distinguishable from the instant matter. For instance, *In re: Shoulder Pain Pump—Chondrolysis Products Liability Litigation*, 571 F.Supp.2d 1367 (J.P.M.L. 2008) involved different shoulder pumps and also the administration of different anesthetic drugs. In the instant matter, all related actions involve the same products—hair relaxers that contain EDCs—and the same mechanism by which the products have caused the alleged harm. Accordingly, the efficiencies of consolidation are not outweighed by individual issues of fact, as all related actions involve hair relaxer products containing EDCs.

**1. Centralization is proper because claims often involve multiple defendants' products.**

Throughout the course of their lives, women who use Defendants' hair relaxer products often use various products that are available to them. As such, there will arise, and have already arisen numerous instances where multiple defendants are named in a single action. At present, every action names multiple defendants.

In situations where there are multiple defendants involving multiple products, efficient and effective management is greatly facilitated by consolidation of all defendants. Indeed, in such cases, failure to consolidate opens a significant possibility of inconsistent adjudication of claims by various courts involving common issues of law and fact. The failure to consolidate all defendants potentially denies claimants access to full adjudication and resolution of their claims.

Also, the transferee judge can address unique issues using separate discovery tracks for each defendant or platform and employ separate motion tracks, to the extent necessary. *See In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001) ("We note that Section 1407 does not require a complete identity or even majority of common factual and legal issues as a prerequisite to centralization. We point out that transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (Jud.Pan.Mult.Lit.1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.").

For example, in the *Testosterone Replacement Therapy Products* MDL, Judge Kennelly in the Northern District of Illinois—one of Movants' proposed choices to oversee this litigation—set staggered bellwether trials involving different products. *See, e.g., In RE: Testosterone Replacement Therapy Products Liability Litigation,* MDL 2545, No. 1:14-CV-01748 (N.D. Ill), Doc. No. 2032 (setting bellwether trials against defendant Eli Lilly and Co.); *id.* at Doc. No. 2018 (resetting bellwether trials against defendant AbbVie Inc.). Just as in other MDLs involving multiple defendants, the court overseeing this proposed MDL could, to the extent it deems necessary, address multiple-defendant issues through staggered or separate discovery and trial schedules. In fact, several multi-defendant MDLs that this court has previously centralized have done just that. *See In re: AndroGel Products Liab. Litig.*, 24 F. Supp. 3d 1378 (J.P.M.L. 2014) (centralizing claims against multiple defendants involving six testosterone replacement therapy drugs); *In re Proton-Pump Inhibitor Liab. Litig. (No. II)*, 261 F. Supp. 3d 1351, 2017 WL 3309647

(J.P.M.L. Aug. 2, 2017) (centralizing claims against multiple defendants involving seven proton-pump inhibitor drugs with both pharmacy and over-the-counter sales).

**2. Inclusion of competing Defendants does not preclude centralization.**

Defendants Dabur International Limited ("Dabur") and Namaste Laboratories, LLC ("Namaste") argue that consolidation is not appropriate where multiple defendants are competitors in the hair relaxer industry.[6] *See* Doc. 31 at 9-10. But the Panel has centralized numerous cases in which competitors in a single industry are defendants.

More analogous Panel decisions include *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, No. MDL 3047, -- F. Supp. 3d __, 2022 WL 5409144, at *2 (J.P.M.L. Oct. 6, 2022); *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017); *In re: Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, 224 F. Supp. 3d 1330 (J.P.M.L. 2016); and *In re: Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, 844 F. Supp. 2d 1359 (J.P.M.L. 2012); *see also In re Proton-Pump Inhibitor Liab. Litig. (No. II)*, 261 F. Supp. 3d 1351, n.6, 2017 WL 3309647 (J.P.M.L. Aug. 2, 2017) (noting that defendants' status as competitors is less of an issue where the products do not have patent protection). In each of these matters, the Panel consolidated cases against competing defendants when the plaintiffs, like here, alleged use of multiple products causing overlapping injuries.

**B. Differing injuries caused by Defendants' products does not preclude consolidation.**

The fact that Plaintiffs suffer from unique injuries does not favor Defendants' position. That is common in personal-injury cases. Here, some plaintiffs have debilitating conditions and

---

[6] Notably, Defendants Dabur and Namaste oppose consolidation of cases against these Defendants, who are competitors in the hair relaxer market, because it would create "an industry-wide MDL," while Defendant L'Oréal USA does not argue that Defendants being competitors in the hair relaxer market precludes centralization, instead claiming that it occupies only a "relatively small portion of the hair relaxer market." *See* Doc. No. 31 at 9; Doc. No. 25 at 3.

require guardians to make legal and medical decisions on their behalf. Others suffer hardships that can be mitigated with medical help. None of that variance is a serious basis to deny centralization, which is the reason Defendants point to no case in which this Panel has rejected centralization because similar injuries were not identical. Indeed, this Panel has repeatedly and recently consolidated cases in the face of differing injuries. *See, e.g.*, *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 437 F. Supp. 3d at 136970 (claims consolidated where injuries involved at least ten types of cancer); *In re Nat'l Prescription Opiate Litig.,* 290 F. Supp. 3d at 137879 (claims consolidated where injuries involved (a) municipalities paying for police, fire, and emergency responses; (b) hospitals paying for treatment costs; and (c) babies suffering from addictions gained in utero); *In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Prod. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975) (rejecting argument that cases should not be consolidated because of differing injuries suffered by plaintiffs).

In *In re Acetaminophen - ASD/ADHD Prod. Liab. Litig*.,[7] the Panel examined whether consolidation was appropriate where the plaintiffs alleged different injuries that are different medical conditions with distinct causes and risk factors. The Panel determined that "the common factual core in these nearly identical actions far outweighs the plaintiff-specific differences" as the injuries claimed by plaintiffs, specifically autism spectrum disorder and attention deficit hyperactivity disorder, are both neurodevelopmental disorders caused by acetaminophen's in utero impact on brain development. *Id.* at *2. Similarly, here, the injuries alleged in each of the related actions are diseases effecting the female reproductive system caused by prolonged use of Defendants' products. Despite Plaintiffs' injuries being different medical conditions with potentially distinct causes and risk factors, "[t]hese common factual allegations, which are central

---

[7] No. MDL 3043, -- F. Supp. 3d --, 2022 WL 5409345 (J.P.M.L. Oct. 5, 2022).

10

to all actions, are sufficient to warrant centralization." *Id.*; *see also In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1403 (J.P.M.L. 2014).

Moreover, despite individual injuries, the overlapping legal and factual claims here will predominate during pre-trial proceedings. To cite but a few examples, the related actions will require extensive discovery regarding Defendants' knowledge of the effects of prolonged exposure to their hair relaxer products, the studies they commissioned to obtain that knowledge, and whether the risks of using their hair relaxer products outweigh the benefits. Given this overlap, centralization will "eliminate duplicative discovery; prevent inconsistent pretrial rulings . . . ; and conserve the resources of the parties, their counsel and the judiciary." *In re: Natrol, Inc. Glucosamine/Chondroitin Mktg. & Sales Practices Litig.*, 26 F. Supp. 3d 1392, 139394 (J.P.M.L. 2014).

## II. Centralization will promote convenience and efficiency.

While they offer no concrete plan for informal coordination among over twenty-five different Plaintiffs (with that number materially increasing) with claims asserted against four groups of different Defendants, Defendants assert that informal coordination is sufficient and centralization is unnecessary primarily because Plaintiffs' claims involve different products designed and manufactured by different manufacturers. As set forth above, however, Defendants drastically understate the common factual and legal issues presented by the presently pending cases and the likelihood that additional cases, involving the same common factual and legal issues, will continue to follow. Indeed, based upon the current rate at which these cases are being filed, Movants fully expect at least sixty cases to be filed, alleging similar injuries arising out of Defendants' design and manufacture of hair relaxer products, by the time the Panel considers their request for centralization.

Under such circumstances—where both the number of cases and the complex common and factual legal issues are substantial—the "purpose of Section 1407 as shown independently by its clear language, corroborated by the legislative history, including the reports of the Congressional Committees and of the Judicial Conference, and by testimony before Congress of its authors, makes clear that its remedial aim is to eliminate the potential for conflicting contemporaneous pretrial rulings" by formally coordinating pretrial proceedings. *See In re Plumbing Fixture Cases*, 298 F. Supp. 484, 490-93 (J.P.M.L. 1968). As demonstrated in Movants' opening brief (Doc. No. 1-1 at 6-10) as well as below, Section 1407's purpose is furthered by centralization here.

**A. Centralization will advance convenience.**

Defendants primarily assert that centralization will not increase convenience for the parties and witnesses because Movants initially sought centralization of only nine cases and that the mere possibility of future filings cannot justify centralization. But, as Movants' show in their opening brief and Defendants fail to address, the Panel regularly creates multidistrict litigation when a similar number of cases are involved.[8] *See* Doc. No. 1-1 at 7; *see also* Manual for Complex Litigation (Fourth), § 20.131 at 220 ("As few as two cases may warrant multidistrict treatment...."). And Defendants' assertion, that the mere possibility of additional cases does not support centralization, is belied by the increasing number of cases that *have* in fact been filed since Movants initially requested centralization.

As Defendants acknowledge, in the three weeks after Movants filed their initial motion seeking centralization of nine federally filed cases in four different judicial districts, seven additional cases were filed in the Southern District of Illinois, Eastern District of Michigan,

---

[8] Indeed, as Defendants point out, Judge Caproni is presently presiding over an MDL that involves only eight actions. Doc. No. 25 at 19.

Southern District of Ohio, Northern District of Illinois, the District of South Carolina, and Western District of Missouri, respectively.[9] *See* Doc. No. 25 at 13. Further, in the one week since Defendants filed their opposition to transfer, an additional five cases have been filed in the Northern District of Illinois, Southern District of Illinois, Southern District of Ohio, Eastern District of New York, and Northern District of California, respectively.[10] There are now twenty-one filed cases in ten different district courts located across the United States from New York to California, including actions scattered across different judicial districts located in the Midwest. Thus, the fact that the number of cases filed is increasing every day is not a "mere possibility," but a reality that supports centralization for the convenience of the parties and witnesses in this matter.

**B. Centralization will advance efficiency.**

Without identifying *any* concrete plan for informal coordination among the parties in the twenty-one filed cases that are presently pending across the United States—let alone a plan for incorporating counsel for the parties in the newly filed cases that are being filed on a near daily basis, Defendants assert that centralization is not appropriate because informal coordination is theoretically possible. Doc. No. 25 at 13-14.

In support of their assertion, Defendants primarily rely upon the Panel's decision in *In re Belviq*. But that case is readily distinguishable from the present case for several reasons. <u>First</u>, although eighteen months had passed since the Food and Drug Administration requested that the

---

[9] *See Edwards v. L'Oréal, USA, Inc., et al.,* No. 3:22-cv-02687 (S.D. Ill.); *Burton, et al. v. L'Oréal USA, Inc., et al.*, No. 2:22-cv-12784-LJM-DRG (E.D. Mich.); *Brownlee, et al. v. L'Oréal USA, Inc., et al.*, No. 3:22-cv-00336 (S.D. Ohio); *Davis v. L'Oréal USA, Inc., et al.*, No. 1:22-cv-06560 (N.D. Ill.); *Holmes v. L'Oréal USA, Inc., et al.*, No. 4:22-cv-04336 (D.S.C.); *Moore v. L'Oréal USA, Inc., et al.*, No. 1:22-cv-06785 (N.D. Ill.); *Wall v. L'Oréal USA, Inc., et al.*, No. 5:22-cv-06128 (W.D. Mo.).

[10] *Mahaffey v. L'Oréal USA, Inc. et al.,* No 1:22-CV-06978 (N.D. Ill.); *Jefferson-Beard v. L'OREAL USA, INC. et al*, No. 2:22-CV-04332 (S.D. Ohio); *Spencer v. Strength of Nature, LLC et al.*, No. 1:22-CV-07082 (E.D.N.Y.); *Baldwin v. Dabur International Ltd. et al*., No. 3:2022-cv-02686 (S.D. Ill.); *Zimmerman v. L'Oreal USA, Inc.*, No. 3:22-cv-07609 (N.D. Cal.).

defendant withdraw its product from the market, "only a limited number of actions have been filed, many by the same plaintiffs' counsel." *In re Belviq*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021). Here, as set forth above, twenty-one federal cases (and at least three state court actions) have been filed arising out of Defendants' manufacture and sale of hair relaxer products containing EDCs in the last sixty days alone, with twelve cases being filed in the last thirty days. And the plaintiffs in these actions are not represented by the same counsel. Second, none of the actions in *In re Belviq* identified the mechanism by which Belviq allegedly caused the various cancers at issue. *Id.* Here, the actions identify a common mechanism in Defendants' hair relaxer products—the same or similar chemicals that disrupt the human endocrine system—that cause the various conditions at issue, which primarily affect the female reproductive system. Third, unlike in *In re Belviq*, there have not been any agreements reached among the various Plaintiffs' counsel and counsel for Defendants regarding the informal coordination of discovery.

Defendants also rely upon numerous other Panel decisions that, unlike here, involved only a small number of cases—with no indication that additional cases were likely to be filed—to support their assertion that informal coordination is appropriate here. *See In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1979) (involving only three actions that did not present complex issues or time consuming discovery); *In re Nat'l Rifle Ass'n Bus. Expenditures Litig.*, 521 F. Supp. 3d 1353 (J.P.M.L. 2021) (involving only four actions pending in three districts where all parties were represented by common counsel and there was no indication that additional cases would be filed); *In re re Geico Customer Data Security Breach Litig.*, 568 F. Supp. 3d 1406-07 (J.P.M.L. 2021) (involving only five actions with three actions pending in the same district and no indication that additional actions would be joined); *In re Maybelline New York & L'Oreal Paris Cosmetic Prod. Mktg. & Sales Prac. Litig.*, 949 F. Supp.

14

2d 1367 (J.P.M.L. 2013) (involving only four actions that involved different factual bases for their claims).

These cases stand for the unremarkable proposition that, where there are relatively few pending cases involving substantially the same counsel for all parties, informal coordination, rather than centralization, is appropriate. Here, however, there are presently claims asserted on behalf of over twenty-five plaintiffs, in twenty-one filed cases, in ten different judicial districts, with many plaintiffs represented by different counsel, against numerous defendants that are also represented by different counsel. Further, if the current trend is any indication, the number of cases will likely substantially increase over the coming weeks and months. Simply put, Defendants do not offer a feasible plan for informal coordination under these circumstances because none exists.

### C. Varying legal issues do not undermine efficiency.

Defendants incorrectly assert that varying legal issues among the presently filed cases will undermine efficiency. Doc. No. 25 at 15-16. In support of their assertion, they rely upon *In re Narconon Drug Rehabilitation Marketing, Sales Practices and Products Liability Litig.*, 84 F. Supp. 1367 (J.P.M.L. 2015). But that case is likewise distinguishable from the present case. In *In re Narconon*, the actions were primarily actions for fraud against providers of a drug rehabilitation program that made individualized representations to the various plaintiffs about the effectiveness of the individualized treatments offered. *See id.* The plaintiffs' claims thus necessarily required each individual plaintiff to present individualized evidence regarding specific representations made to each plaintiff, the conditions of the different facilities attended by the plaintiffs at different times, and the "widely varying" emotional and economic injuries allegedly suffered by the plaintiffs. *Id.*

15

Here, while many of the actions assert fraud-based claims against Defendants, the present cases are primarily product liability actions and, as set forth above, such cases are routinely centralized by the Panel. Moreover, as set forth above, Defendants overstate the number of hair relaxer manufacturers and hair relaxer products at issue to falsely suggest that there are an endless number of "permutations" of plaintiffs' claims. *See* Doc. No. 25 at 15-16. There are, however, only four groups of Defendants with a limited number of hair relaxer products. Further, each hair relaxer product contains the same or similar EDCs and other chemicals that are carcinogens that disrupt the human endocrine system in the same ways—resulting in the same or substantially similar mechanism of injury. And the alleged misrepresentations by the respective Defendants will be the same for all Plaintiffs because they bought the exact same finite group of hair relaxer products based upon the exact same finite marketing and advertising materials of each respective Defendant. Thus, having a single jurist decide the common legal issues that will inevitably arise among the various cases will undoubtedly promote efficiency and consistency of adjudications.

### III. The MDL should be assigned to the Northern District of Illinois.

Movants' proposal to transfer consolidated proceedings to the Northern District of Illinois is the best course of action. If anything, the filings before the Panel demonstrate that no single state is the clear center of gravity for these cases. *See, e.g., In re Motor Fuel Temperature Sales Practices Litig.*, 493 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007) ("Given the geographic dispersal of constituent actions and potential tag-along actions, no district stands out as the geographic focal point for this nationwide docket."). Plaintiffs reside all around the country, so there is no particular jurisdiction that is a natural choice to accommodate all of them. The same is true for Defendants. While Defendants assert that centralization is more appropriate in the Southern District of New

York primarily because *one* of the Defendants (L'Oréal) is headquartered there[11] and others have offices located nearby in New Jersey and Delaware, each of the Defendants operates nationwide and routinely faces litigation in jurisdictions across the country. The Northern District of Illinois provides a centralized and convenient location for all parties and their counsel.[12]

Moreover, because Defendants are not located in one central location and Plaintiffs are spread throughout the country, the location of evidence, documents, and witnesses in this matter will undisputedly be spread across jurisdictions nationwide. Furthermore, because litigation operates primarily in electronic format, merely the location of documents and evidence at L'Oréal's headquarters in New York provides little additional convenience or efficiency. *See Fanning v. Capco Contractors, Inc.*, 711 F. Supp. 2d 65, 70 (D.D.C. 2010) ("The Court notes that the location of documents is increasingly irrelevant in the age of electronic discovery."); *Excellent Home Care Servs., LLC v. FGA, Inc.*, 2014 WL 652357, at *5 (E.D.N.Y. Feb. 19, 2014) ("But as electronic documents are easily transmitted, their location is of little importance.").

The Northern District of Illinois also stands out for its proven record of efficiently managing its docket and its experience in overseeing MDLs. While Judge Tharp is certainly a capable jurist, Judge Kennelly's experience in managing complex litigation, including MDLs, is unmatched within the Northern District of Illinois. Judge Kennelly has the knowledge and practical experience to address any of Defendants' alleged concerns regarding convenience and efficiency and to shepherd this litigation towards the most efficient resolution, while also conserving the

---

[11] Defendants' assertion that centralization is appropriate in the Southern District of New York because L'Oréal is the principal Defendant in the related actions and is headquartered there is undermined by L'Oréal's own assertion that it "occupies a relatively small portion of the hair relaxer market." Doc. No. 25 at 3.

[12] Presently, eight of the twenty-one filed federal cases are pending in the Northern District of Illinois. An additional two cases are pending in the Southern District of Illinois. In contrast, only *one* case is pending in the Southern District of New York.

resources of the parties and the federal judiciary. And, to the extent Judge Kennelly lacks the capacity to preside over another MDL or the Panel prefers to assign this matter to a judge that has not yet had the opportunity to oversee an MDL, Judge Rowland is more than capable to preside over this MDL and furthers the Panel's interest in expanding both diversity and MDL experience among the federal judiciary.

## CONCLUSION

Dozens of women have filed cases seeking justice in ten different judicial districts across the United States. Where both the number of cases and the complex common and factual legal issues are substantial, such as here, Section 1407's purpose is furthered by centralization. As such, Movants seek the centralization of these cases in a single MDL. Defendants have failed to provide any compelling reason for this Panel not to create a single MDL for these cases. Defendants have also failed to provide any compelling reason why consolidation is more appropriate in the Southern District of New York as opposed to the geographically central location of the Northern District of Illinois. For these reasons and the reasons set forth in Movants' opening brief, Movants respectfully request that the Panel transfer the scheduled actions and any additional tag-along actions to the Northern District of Illinois for coordinated or consolidated pretrial proceedings before either the Honorable Mary M. Rowland or the Honorable Matthew F. Kennelly.

Dated: December 14, 2022

Respectfully submitted,

*/s/ Diandra S. Debrosse Zimmermann*
Diandra S. Debrosse Zimmermann
**DiCELLO LEVITT LLC**
505 20th North Street, 15th Floor
Birmingham, Alabama 35203
Tel: (205) 855-5700
fu@dicellolevitt.com

Adam J. Levitt

Blake Stubbs
**DiCELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Tel:  (312) 214-7900
alevitt@dicellolevitt.com
bstubbs@dicellolevitt.com

Mark A. DiCello
Mark Abramowitz
Justin J. Hawal
**DiCELLO LEVITT LLC**
7556 Mentor Avenue
Mentor, Ohio  44060
Tel:  (440) 953-8888
madicello@dicellolevitt.com
mabramowitz@dicellolevitt.com
jhawal@dicellolevitt.com

Bernadette Armand
Elizabeth P. White
Éviealle J. Dawkins
**DiCELLO LEVITT LLC**
1101 17th Street, NW, Suite 1000
Washington, DC  20036
Tel:  (202) 975-2288
barmand@dicellolevitt.com
pwhite@dicellolevitt.com
edawkins@dicellolevitt.com

Benjamin Crump
**BEN CRUMP LAW**
122 South Calhoun Street
Tallahassee, Florida  32301
Tel:  (800) 691-7111
ben@bencrump.com

Nabeha Shaer
**BEN CRUMP LAW**
633 Pennsylvania Avenue, NW, Floor 2
Washington, DC  20004
Tel:  (800) 959-1444
nabeha@bencrump.com

Larry Taylor
**THE COCHRAN FIRM**

1825 Market Center Boulevard, Suite 550
Houston, Texas 77054
Tel: (214) 561-4260
ltaylor@cochrantexas.com

***Counsel for Movants***